UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| In re FEDEX GROUND PACKAGE SYSTEM, INC. EMPLOYMENT PRACTICES LITIGATION<br><br>-------------------------------------------------<br>THIS DOCUMENT RELATES TO:<br><br>*Dale Fluegel, et al. v. FedEx Ground Package System, Inc.*<br>Civil No. 3:05-CV-529 RM (IL) | CAUSE NO. 3:05-MD-527 RM<br>(MDL-1700) |

OPINION AND ORDER

This matter is before the court on the Illinois plaintiffs' summary judgment motion. Doc. # 1335. Finding no disputed issue of material fact that the plaintiffs were working within the usual course and place of business of FedEx when delivering and picking-up packages, the court GRANTS the plaintiffs' motion for summary judgment on their Illinois Wage Act claims. The court will address the plaintiffs' common law claims by separate motion.

DISCUSSION

The court incorporates the common undisputed facts from the Michigan order (doc. # 2018) and in so doing, views the facts in the light most favorable to FedEx. Omega Healthcare Investors, Inc. v. Res-Care, Inc., 475 F.3d 853, 857 (7th Cir. 2007) ("We view all facts and draw all inferences in the light most favorable to the non-moving party."). Summary judgment is appropriate when there is no

1

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine issue of material fact when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events."' (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

The Illinois Wage Act defines an "employee" as "any individual permitted to work by an employer in an occupation," but excludes any person (1) who is free — both under the contract and in practice — from control and direction over the work's performance, (2) whose work is performed either outside the employer's usual course of business or outside the employer's places of business, and (3) who is in an independently established business. 820 ILL. COMP. STAT. 115/2. The putative employer must demonstrate the exemption's applicability. Adams v.

Catrambone, 359 F.3d 858, 864 (7th Cir. 2004). Each element of the exemption must be present for the service provider to be an independent contractor. Novakovic v. Samutin, 820 N.E.2d 967, 973 (Ill. App. Ct. 2004).

The court need only address the second prong of the exemption - i.e., whether plaintiffs perform work outside the usual course of FedEx's business *or* outside FedEx's place of business. FedEx can meet this prong by satisfying either condition. Novakovic v. Samutin, 820 N.E.2d at 975. "When considering the employer's usual course of business, Illinois courts focus on whether the individual performs services that are necessary to the business of the employer or merely incidental." Id. "An employer's place of business is not limited only to its own home offices, but can extend to any location where workers regularly represent an employer's interest." Novakovic v. Samutin, 820 N.E.2d at 975 (*citing* Carpetland U.S.A., 776 N.E.2d 166 (Ill. 2002)). Illinois courts have used this rationale when a worker was assigned to a specific geographic area, such as a sales territory or delivery route. Carpetland U.S.A., 776 N.E.2d at 189.

FedEx argues that the court's analysis of the places of business factor in United Delivery Service, Ltd. v. Didrickson, 659 N.E.2d 82 (Ill. App. Ct. 1995), *overruled on other grounds,* is instructive and should be followed in this case. In United Delivery Service, the court held that though the drivers for a messenger delivery service made their deliveries within the usual course of the business, their services weren't performed within the place of its business. Id. at 85. The court noted that the drivers received assignments either by calling UDS or by use of

pagers or radios and would pick up the packages from customers. Id. at 83, 85. They decided their own method of delivering packages and were allowed to work for other delivery companies. Id. Uniforms weren't required, but some drivers rented or purchased uniforms from UDS. Id. Drivers were paid after returning delivery tickets to UDS, but the delivery tickets could be mailed; drivers didn't have to report to UDS offices. Id. at 83-84.

The Department of Employment Security had found that the roadways were the usual place of the drivers' business, relying on O'Hare-Midway Limousine Serv., Inc. v. Baker, 596 N.E.2d 795 (Ill. App. Ct. 1992), in which the court ruled that limousine chauffeurs represented the interests of the limousine company whenever they picked up passengers, so the usual place of business was the roadways traveled. United Delivery Service, 659 N.E.2d at 85. The court disagreed and distinguished O'Hare-Midway because the limousine drivers leased the limousines from the company and were required to wear a dark business suit and tie when driving. Id. at 85. The court reasoned that the drivers in United Delivery Service didn't represent UDS when making deliveries; they weren't required to wear uniforms and weren't required to state that they represented UDS. 659 N.E.2d at 85.

The holding in United Delivery Service is readily distinguishable from this case and not in line with other cases ruling that the hired party was performing services within the company's place of business. In Rozran v. Durkin, 45 N.E.2d 180 (Ill. 1942), the court held that the driver for a messenger service company

4

performed some services within the company's places of business, so he was an employee. Id. at 183-184. The driver in Rozran used his own truck to make deliveries and paid his own operating expenses. Id. at 181. He wasn't required to report to the company at any particular time or on any particular day, but the evidence showed that he reported to the company most mornings. Id. He wasn't required to make deliveries in any particular manner, but was given packages to deliver to various locations in the Chicago metropolitan area. Id. At times he would call the office and receive directions to pick up packages for delivery and collected C.O.D.'s on packages. Id. It couldn't be said that the driver performed services outside of the company's business, the court reasoned, because he "reported to the offices each and every day, received his instructions from the dispatcher, secured the load for his truck on the premises, [and] returned his collections and his moneys on C.O.D. packages to the office of the company." Id. at 183 (internal quotations marks omitted).

Similarly, in Carpetland v. Illinois Dept. of Employment Security, 776 N.E.2d at 173-174, 189, the court determined that carpet measurers hired to measure for Carpetland at customers' premises provided services at Carpetland's place of business. When measurements were needed, a Carpetland salesperson either measured himself or referred the job to a measuring service after explaining to the customer that the measuring service was an independent business. Id. at 174. The measurers were allowed to work for other companies. Id. In general, after taking measurements, the measurer would return to his home to make a diagram

of each job and then place the forms in the mailbox. Id. at 173-174. The measurers rarely went into the Carpetland store. Id. No one from Carpetland checked the measurers' work. Id. The court reasoned that "when a Carpetland salesperson visits a customer's premises to obtain measurements necessary for the quoting of a price and the closing of a sale, he is 'representing his employing unit's interest.'" Id. at 189. This was also true of "a measurer to whom the salesperson might delegate this task." Id. Accordingly, the court held "that because the measurers are representing Carpetland's interest when they visit a customer's premises to take measurements, they are providing services at Carpetland's place of business." Id.

The court in AFM Messenger Service, Inc. v. Dept. of Employment Security, 733 N.E.2d 749 (Ill. App. Ct. 2000), *aff'd on other grounds*, 763 N.E.2d 272 (Ill. 2001), held likewise. AFM was engaged in the messenger service delivery business and to carry out its enterprise, AFM hired delivery drivers to pick up and deliver parcels to customers. Id. at 752. The drivers were required to display a sign on their vehicles indicating that the vehicle was leased from AFM and when drivers appeared at the customers' premises, they announced to the customer that they were from AFM. Id. at 752-753. They received assignments by either telephone, pager, or radio; they were free to decline assignments or hire assistants. Id. at 753. AFM required the drivers to report to AFM's office to pick up their paychecks. Id. at 756. They could use their vehicles for other purposes and could work for other businesses. Id. at 753. The court held that the drivers performed their

6

services within the places of AFM's business because they announced that they represented AFM when making deliveries and were required to report to AFM's office for their paychecks. Id. at 756.

The court in Chicago Messenger Service v. Jordan, 825 N.E.2d 315 (Ill. App. Ct. 2005), criticized the United Delivery Service v. Didrickson holding as out of step with other cases applying the places of business factor. In Chicago Messenger Service, Chicago Messenger was engaged in the messenger delivery service business and utilized couriers to pick up, transport and deliver packages. Id. at 317. The couriers weren't required to accept any particular assignments, work certain hours or fulfill a certain quota of deliveries. Id. at 318. They weren't required to attend meetings or report to the Chicago Messenger office; even though some couriers delivered their invoices to Chicago Messenger, others mailed them in. Id. Chicago Messenger didn't require the couriers to wear a full uniform, but did require them to wear approximate identifying colors and patches and to display their I.D. badges. Id. Couriers who made their deliveries by car had to display a placard identifying Chicago Messenger. Id.

The Chicago Messenger Service court determined that the case was more similar to Rozran, O'Hare-Midway, Carpetland and AFM than to United Delivery Service. Chicago Messenger Service, 825 N.E.2d at 326. The court reasoned that the Chicago Messenger couriers performed pick-up and delivery services similar to the services provided in Rozran, AFM, and O'Hare-Midway. Id. Like the Chicago Messenger couriers, the Rozran messengers, the O-Hare-Midway limousine

7

chauffeurs and the Carpetland measurers, "were essentially free from any requirement to report to the business office premises." Id. The court noted that "[e]ven the AFM messengers, who were required to report to the company offices to pick up their paychecks, also received assignments by telephone or pager and could mail in their delivery tickets rather than take them personally to the office." Id. The court explained that "[b]ecause [Chicago Messenger's] interests were furthered by the couriers' performance of their services," they "represented the company's interest when making deliveries." Id. at 327. The court therefore upheld the Director of Employment Secuirty's determination that the Chicago Messenger couriers were employees. Id. at 328.

FedEx Ground, together with its operating division FedEx Home Delivery, provides small-package pick-up and delivery services through a network of pick-up and delivery drivers. FedEx Home Delivery provides small package delivery service primarily to residential customers, and FedEx Ground focuses on the pick-up and delivery of small packages to businesses. All three named plaintiffs are former FedEx Ground or Home Delivery drivers who worked in Illinois. Named plaintiff Diane Gordon signed the FedEx Home Delivery Operating Agreement and worked for about three years at the Bedford Park terminal. Named plaintiff Clarence Kelly also signed the FedEx Home Delivery Operating Agreement and worked for almost two years, first at the Wrigleyville terminal and then at the Northbrook terminal. Named plaintiff Dale Fluegel signed the FedEx Ground Operating Agreement and worked for two years at the Carol Stream terminal.

FedEx required the plaintiffs to provide pick-up and delivery services for FedEx and "to conduct his/her business so that it [could] be identified as being a part of the [FedEx] system." OA, Background. The services performed by the named plaintiffs were necessary to FedEx's business of picking up and delivering packages. FedEx Vice President of Contractor Relations Robert Ostrov testified that contractors are a cornerstone of FedEx's business. Ostrov Dep., pp. 192-193. FedEx former CEO Dan Sullivan testified that the contractor is intended to be a "centerpiece" of FedEx's "work force" and is an "essential component of [FedEx's] business." Sullivan Dep., pp. 27, 106; *see also* Emmanuel Monti, Senior Manager of Contract Relations, Dep., p. 204 (describing FedEx drivers as being part of the FedEx "network"). It is undisputed that the plaintiffs' work was performed within the usual course of FedEx's business.

Drivers must wear the FedEx uniform when making deliveries and the Operating Agreement provides that the uniform should be "maintained in good condition" and the driver will "keep his/her personal appearance consistent with reasonable standards of good order as maintained by competitors and promulgated from time to time by [FedEx]." OA, ¶ 1.12. The uniform contains FedEx's logo, making it readily apparent that the driver works for FedEx. Paragraph 1.12 of the Operating Agreement explains that the driver must wear a FedEx approved uniform because "the presentation of a consistent image and standard of service to customers throughout the system is essential in order to be competitive . . . and to permit recognition and prompt access to customers' places

of business." Divisional Vice President of the Central Division Robert Holcombe testified that the drivers' "appearance is important because of the brand and the importance of brand image" and allows the drivers "access into customers' locations." Holcombe Dep., p. 216. Mr. Holcombe also testified that the FedEx logo is important for advertising and marketing of the brand. Holcombe Dep., pp. 259-260; *see also* Sullivan Dep., p. 263 (testifying that the drivers' uniform and truck is used to project FedEx's image). Mr. Monti testified that the FedEx driver "is the most highly visible person out there . . . and his physical appearance, the way he interfaces with customers, tells a lot about the company and tells the customers basically whether they want to continue to do business [with FedEx]." Monti Dep., pp. 202-203.

The drivers are responsible for supplying their vehicles, but the vehicles must be painted "FedEx White," bear FedEx logos and advertising, and meet FedEx's minimum specifications. Even though FedEx might show flexibility with vehicle specifications and allow drivers to determine what make and model of truck to purchase or lease, FedEx branding requirements allow customers to readily identify the truck as associated with FedEx. The drivers can use their vehicles for other purposes but only when they aren't carrying FedEx packages and only if they mask or remove any FedEx marks or logos.

The contractor, or someone on his behalf, must pick up packages at the FedEx terminal before he can begin delivering for the day. Senior Vice President of Terminal Operations Michael Mannion testified that "[a] contractor is not

supposed to leave [the terminal at the start of the day] until all his packages are available to him." Mannion Dep., p. 305. At the terminal, the drivers obtain a list of their deliveries and load the packages onto their trucks. The drivers are expected to attempt delivery of all the packages assigned on their route for that day. Ground drivers who pick up customer packages must return to the terminal by a certain time, but Home Delivery drivers aren't required to return.

Ground drivers generally work Monday through Friday and Home Delivery drivers generally work Tuesday through Saturday. To provide enough packages to drivers so they could make full use of their equipment as provided by the Operating Agreement, FedEx structured the routes so the vehicle was in use nine to eleven hours per day; this measurement would vary somewhat between facilities. This measurement was replaced in 2005 with a metric that sets forth the maximum number of stops a driver who is fully utilizing his vehicle reasonably can be expected to handle on any given day. Contractors can hire replacement drivers to run their routes, but the replacements are subject to FedEx approval in certain respects and must conform to the applicable obligations undertaken by contractor.

FedEx managers must conduct at least two, but not more than four, customer service rides each year. The customer service rides give managers a chance to see that the drivers are complying with FedEx's customer service standards and to ensure that the drivers are operating their vehicles safely. FedEx managers are expected to conduct at least two business discussions per year with

each driver; the goal of having two business discussions per year was clarified as not mandatory in August 2005. The drivers' managers use the business discussions to provide recommendations and counseling to drivers in the performance of their contracted work. A review of the business discussions show that at times they appear mandatory, but at other times they appear to be mere suggestions. The plaintiffs have presented documentation of customer service rides and business discussions as to Mr. Fluegel and Ms. Gordon, but not as to Mr. Kelly. Even if not applied uniformly, FedEx's policies or procedures underlying the business discussions and customer service rides show that FedEx attempts to maintain its image and reputation by observing or reviewing its drivers' performance, at least to some degree, while on route, and if necessary, discussing ways they can improve their performance.

Even when the court considers all the facts in FedEx's favor, as the court must, FedEx can't satisfy its burden of showing that the plaintiffs' work was outside all the places of FedEx's business. The terminals where drivers pick up packages and the drivers' delivery routes are considered FedEx's places of business under Illinois law. Contractors report to the terminals daily or have someone on their behalf report to the terminals, so they can retrieve their packages. The drivers represent FedEx when making deliveries and picking up packages. All drivers are required to wear FedEx uniforms and their trucks must contain FedEx's logo. FedEx has processes in place to determine whether drivers are providing suitable customer service during their deliveries and FedEx

managers provide drivers with suggestions to better serve customers while representing FedEx.

This case differs from <u>United Delivery Service</u>, in which uniforms weren't required and the drivers didn't have to stop at UDS to retrieve the packages. In any event, the court declines to rely on <u>United Delivery Service</u> in light of <u>Rozran</u>, <u>O'Hare-Midway</u>, <u>Carpetland</u>, <u>AFM</u>, and <u>Chicago Messenger Service</u>, in which the courts held that roadways, delivery routes, sales territories and customer premises are the company's places of business when the worker is representing the company's interest. The undisputed evidence shows that FedEx drivers represent FedEx's interest when delivering and picking up packages.

CONCLUSION

Because there is no genuine issue of material fact that FedEx is unable to show the second prong of the exemption under the Illinois Wage Act, the court GRANTS the Illinois plaintiffs' motion for summary judgment as to its claims under that Act (doc. # 1335). The court will address the plaintiffs' remaining claims in their summary judgment motion by separate order.

SO ORDERED.

ENTERED:  May 28, 2010

/s/ Robert L. Miller, Jr.
Judge
United States District Court